UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORENZO ELLISON, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 02 C 8546 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| JONATHAN R. WALLS, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Lorenzo Ellison ("Ellison") has filed a petition for habeas corpus relief, alleging that : (1) he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; (2) the state did not meet its burden of proving his guilt beyond a reasonable doubt because the state did not prove his intent to cause death or serious bodily harm to the victim; (3) the trial court abused its discretion when it allowed autopsy photographs to be shown to the jury; (4) the trial judge failed to change venue *sua sponte* in response to the publicity surrounding the case; (5) the trial court abused its discretion by allowing certain allegedly inflammatory statements made by the prosecution in its closing argument, despite objections by the defense; and (6) the trial court abused its discretion by considering his claim of innocence to be an aggravating factor in sentencing. For the reasons set forth below, Ellison's petition for habeas corpus relief is denied.

1

# I. BACKGROUND

Ellison was convicted, following a jury trial, of the first degree murder of Quincy King ("King"), a four month old infant. At trial, the state argued that King's death was the result of "shaken baby syndrome" and that it was Ellison who shook the baby to death. Ellison argued that he was in fact playing with the child too roughly, and that this caused the infant's death. The jury rejected Ellison's explanation, and he was sentenced to 60 years imprisonment.

Ellison appealed his conviction and sentence to the Illinois Appellate Court, arguing that: (1) his trial counsel was ineffective for failing to obtain an expert witness to testify on whether King's death was actually the result of shaken baby syndrome; (2) the state did not prove beyond a reasonable doubt that he had the requisite mental state to commit murder; and (3) the trial court abused its discretion when it considered his protestations of innocence as an aggravating factor in sentencing. The Illinois Appellate Court, Second Judicial District, affirmed Ellison's conviction and sentence. *People v. Ellison*, No. 2-93-1089 (Ill. App. Ct. 1995).

Ellison then filed a *pro se* post-conviction petition, alleging: (1) that the trial court abused its discretion by allowing autopsy photographs of King to be submitted to the jury; (2) that his counsel was ineffective for: (a) not filing a motion to transfer venue when the trial judge indicated that he had heard about the case and when the jurors would likely have heard of the case because of its publicity; (b) failing to move to suppress Ellison's statements to the police; and (c) failing to object to certain remarks made by a defense expert; (3) that the trial judge abused his discretion by allowing the prosecutors to make certain remarks to the jury in closing arguments; (4) that his appellate defense

counsel was ineffective for not raising the foregoing issues on appeal; and (5) that the Illinois Department of Corrections denied him access to the courts; and (6) reasserting the issues raised in his original appeal. The court dismissed all of these claims. *People v. Ellison*, 92 CF 2930.

Ellison then appealed this decision. His state-appointed counsel for the appeal was allowed to withdraw, despite Ellison's motion opposing his withdrawal. The Appellate Court then affirmed the denial of Ellison's post-conviction petition. *People v. Ellison*, No. 2-01-0019 (Ill. App. Ct. 2001). Ellison then filed a petition for leave to appeal this decision to the Illinois Supreme Court; that petition was likewise denied. *People v. Ellison*, No. 93113 (Ill. 2002). Ellison then filed the instant motion for habeas corpus relief.

## II. ANALYSIS

In his petition for habeas corpus relief, Ellison argues that: (1) he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution because: (a) his counsel did not retain an expert on shaken baby syndrome; (b) his counsel did not file a motion to change venue upon discovering that the trial judge had heard about the case and that the jurors would likely have heard of the case from the media; and (c) his counsel failed to move to suppress Ellison's statements to the police; (2) the state did not meet its burden of proving his guilt beyond a reasonable doubt because the state did not prove his intent to cause death or serious bodily harm to King; (3) the trial court abused its discretion when it allowed autopsy photographs to be shown to the jury; (4) the trial judge failed to change venue *sua sponte* in response to the publicity surrounding the case; (5) the trial court abused its discretion

by allowing certain allegedly inflammatory statements made by the prosecution in its closing argument, despite objections by the defense; and (6) the trial court abused its discretion by considering his claim of innocence to be an aggravating factor in sentencing. The court now considers each of these arguments in turn.

**A. Standard of Review**

When deciding the habeas corpus petition of an individual in state custody, the court relies upon the standard of review mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA") for all habeas petitions not decided before April 24, 1996. *Holman v. Gilmore*, 126 F.3d 876, 879-80 (7th Cir. 1997). The U.S. Supreme Court has interpreted AEDPA to give courts two possible grounds for granting habeas corpus relief. *Bell v. Cone*, 535 U.S. 685, 694 (2002). First, " a Federal habeas court may issue a writ under the 'contrary to' clause [of AEDPA] if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Id.* Second, a "court may grant relief under the 'unreasonable application' clause [of AEDPA] if the state correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case." *Id.* With respect to the definition of "unreasonable," an application is not unreasonable if it is merely wrong; the application must be "objectively unreasonable." *Id.* The Seventh Circuit has expanded upon this definition and has determined that an application is objectively unreasonable when "decisions [are] at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, that a writ must issue," *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).

4

When applying these two tests to the facts of a particular case, the court still reviews both state court legal determinations and mixed questions of law and fact *de novo*. *Id.* at 748. The court, however, must show a "high measure of deference" to the state courts' findings of fact. *Sumner v. Mata*, 455 U.S. 591, 598 (1982).

**B. Ineffective Counsel**

Ellison argues that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because: (a) his counsel did not retain an expert on shaken baby syndrome; (b) his counsel did not file a motion to change venue upon discovering that the trial judge had heard about the case and that the jurors would likely have heard of the case from the media; and (c) his counsel failed to move to suppress Ellison's statements to the police.

In evaluating the merit of Ellison's claim of ineffective counsel, the court looks for guidance to *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hall*, 106 F.3d at 749. To obtain relief for ineffective counsel under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, which requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In a habeas petition claiming ineffective counsel, a petitioner must also demonstrate that the state courts that rejected his ineffective counsel claim "applied *Strickland* to the facts of [the] case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699. Ellison fails to meet the requisite burden.

Ellison's first argument alleging ineffective counsel is based upon his counsel's failure to retain an expert to contradict the prosecution's experts who opined that King died of a result of shaken baby syndrome. While failure by counsel to retain an expert may be grounds for overturning a conviction under *Strickland*, Ellison fails to show that the Illinois courts in this case misapplied *Strickland* to such an extent that the court should grant habeas relief. The Illinois courts' findings, to which this court must defer, found the following facts. First, the Illinois Appellate Court concluded from the record that Ellison's "attorneys recognized the importance of experts' testimony yet nonetheless did not obtain experts to testify on defendant's behalf." *People v. Ellison*, No. 2-93-1089, 6. Taken alone, this statement might justify overturning Ellison's conviction. However, the appellate court also found that it is very possible that "counsel simply tried but failed to find an expert who would testify that Quincy King did not die from shaken infant syndrome." *Id.* The appellate court also pointed out that "nothing in the …record indicate[s] that the defendant could have produced a favorable witness." *Id.* at 8.

In his post-conviction appeal, Ellison attempted to refute this finding by producing a doctor who averred that he examined the autopsy photographs, yet could not tell how long the shaking had taken place or how much force was used against the victim, although he was certain that "great force was applied." (Aff. of Steven Lazoritz, M.D.). As the state court pointed out, however, that statement does not contradict the prosecution experts' claim that the child was shaken to death. *People v. Ellison*, 92 CF 2930, 6-7. In addition, the court pointed out that Ellison produced no affidavit which said that there was an expert who was willing to testify that King did not die as a result of "shaken baby syndrome," and therefore he did not meet his burden of showing that his

counsel was ineffective for failing to obtain such an expert. *Id.* at 8-9. Ellison has still not introduced any evidence to show that an expert was available who would contradict the prosecution experts' testimony. Therefore, deferring to the state courts' finding of fact that Ellison has not shown that it was even possible for his counsel to contain such an expert, this court cannot determine that Ellison's counsel was ineffective within the meaning of *Strickland* for failure to obtain an expert.

Ellison also argues that his counsel was ineffective for failing to move to change venue after he learned that the trial judge had heard about the case on the radio. For Ellison to prove that this omission deprived him of his Sixth Amendment right to effective counsel (assuming that the omission was an error), he must, under *Strickland*, show not only that "the error[] had some conceivable effect on the outcome of the proceeding" but also "that counsel's deficient conduct more likely than not altered the outcome of the case." 466 U.S. at 693.

In denying Ellison's post-conviction petition, the Circuit Court of Lake County noted both that nothing in the record indicated that a change of venue motion would have been granted and that nothing in the record indicated that the trial judge was in any way affected by the mention of the case on the radio. *People v. Ellison*, 92 CF 2930, 2-4, 9. Ellison presents no evidence that these two findings are incorrect. Additionally, this omission may have been a strategic move by Ellison's counsel in the first place, and this court is required to "strongly presum[e]" that the decision of Ellison's counsel was "made … [with] the exercise of reasonable professional judgment." *See Strickland*, 466 U.S. at 690. Since Ellison offers no evidence that this decision was unreasonable within the meaning of *Strickland*, and because the court has no reason to presume that this was not a

reasonable strategic move, the court concludes that Ellison has not met his burden to show that this omission was unreasonable or prejudicial within the meaning of *Strickland*, much less that the state courts' judgment upon this matter was "objectively unreasonable" under AEDPA.

Ellison's final argument alleging ineffective assistance of counsel is that his attorney erred in failing to move to suppress his statements to the police. The Circuit Court of Lake Country, in denying Ellison's petition for post-conviction relief on this ground, found that Ellison failed to show that his counsel's decision not to move to suppress the statements was unreasonable and observed that such a motion would probably have been denied anyway. *People v. Ellison*, 92 CF 2930, 8. Ellison cites no case in any of his briefs to support the notion that such a motion would have succeeded and, in this court's independent judgment, such a motion would have likely failed. The record shows that Ellison was informed of his rights before giving each of the statements and prior to signing the prepared statement. Trial Tr., 447-49, 865-66, 878. The record also shows that the issue of the credibility of the statements was extensively explored at trial. This court cannot, therefore, decide that the state court's decision on this issue was unreasonable under AEDPA. Even if Ellison's attorney's failure to move to suppress the statements was unreasonable error (as it may or may not have been), the failure to move was not prejudicial under *Strickland*, since such a motion would have likely failed.

## C. The State's Burden to Prove Guilt Beyond a Reasonable Doubt

Ellison next argues that the state failed to prove his guilt beyond a reasonable doubt because it did not prove that he intended to kill or cause serious bodily harm to King. The State argues in its brief that this argument is procedurally defaulted since it

was not raised in state court. The State is incorrect in making such a claim; this issue was raised in Ellison's original appeal. Appellant's Br. and Argument, 21-25. The court therefore turns to the merits of Ellison's claim.

For Ellison to prevail on this claim, he must demonstrate that the Illinois Appellate Court was unreasonable when it decided that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of [this] crime beyond a reasonable doubt." *Jackson, v. Virginia*, 443 U.S. 307, 319 (1979). The court must therefore examine the appellate court's reasoning underlying this decision.

The appellate court provided several different chains of inference that could lead a rational trier of fact to the conclusion, beyond a reasonable doubt, that Ellison intended to inflict severe bodily harm to King. First, the court found that the evidence showed that the injuries were a result of very severe force and that the doctor who treated King at the hospital "testified that the injuries were inconsistent with defendant's explanation." *People v. Ellison*, 92 CF 2930, 8. Prosecution experts, as has been discussed above, also argued that King's death could only have been due to shaking. A rational jury, therefore, could have found beyond a reasonable doubt that King was shaken to death by Ellison and that Ellison lied to the doctor because he know that shaking could have caused serious bodily harm or death. *Id.* at 12. The same could be said with regard to Ellison's statements to the police, in which he denied shaking the baby. Furthermore, Ellison had been warned about handling the child too roughly; Ellison said that he knew the baby was fragile, and Ellison "had considerable experience handling small children." *Id.* at 10-11. All of these facts could lead a rational trier of fact to conclude that Ellison knew that he

9

could seriously injure the baby. Furthermore, there was testimony at trial that Ellison repeatedly yelled at the baby to "shut up" while it was crying, and Ellison eventually told the police that he shook the baby to stop him from crying. *Id.* at 11. All of these facts, taken together, could permit a jury to infer that Ellison knew the potentially serious consequences of his actions. Ellison fails to enlist any Supreme Court case to contradict the reasonableness of the appellate court's decision. This court, therefore, cannot hold that the Illinois court's application of law in this case was unreasonable within the context of AEDPA.

**D. The Autopsy Photographs**

Ellison argues that he was deprived of his Sixth and Fourteenth Amendment rights when the trial judge allowed the jury to see autopsy photographs of King's body. Although the admission of such photographs would be questionable under the Federal Rules of Evidence as posing a threat of unfair prejudice, under Illinois law the admissibility of such photographs is within the trial court's discretion. Fed R. Evid. 403; *People v. Terrell*, 185 Ill. 2d 467, 495 (Ill. 1998). Regardless of whether the photographs ought to have been admitted, Ellison's argument, which he classifies as constitutional, is actually not constitutional at all, but is rather an argument addressing the admissibility of the photographs under Illinois law. Ellison cites no federal case law in support of his argument, but rather cites precedent under Illinois evidence law. Ellison's only possible constitutional argument regarding the admission of the photographs would be that their admission made his trial fundamentally unfair. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333, 335 (1966). However, although admission of the photographs would be questionable under both state and federal law, their admission can hardly be said to have

created a constitutionally unfair trial. Since this court may issue a writ of habeas corpus only in response to a constitutional violation, it has no reason to decide whether the photographs in question should have been admitted: that is a question of Illinois law that has been decided in this case by the Illinois courts.

**E. Change of Venue**

Ellison argues that the trial judge had a duty to *sua sponte* change venue due to his own awareness of the case as well as possible tainting of the jury, both a result of coverage by the local news media. The state argues that Ellison failed to raise this issue in the state court system and thereby procedurally defaulted on the argument. Once again, the state errs in making this claim; Ellison did, in fact, raise this issue in his post-conviction relief petition (Pet. for Post-Conviction Relief, 17-18). The court therefore next considers the merits of Ellison's argument.

In support of his contention that the trial judge was constitutionally required to change venue (or at least continue the case until the publicity had diminished), Ellison again cites *Sheppard*, which held that a trial can be constitutionally unfair as a result of the surrounding publicity. 384 U.S. at 335. For this court to find that the Illinois courts unreasonably decided this issue under AEDPA, it must find that "the state court applie[d] a rule different from the governing law set forth in [the Supreme Court's] cases, or it decide[d] a case differently than [the Supreme Court] [did] on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. However, the state courts failed to address Ellison's *Sheppard* argument. Therefore, this court must adjudicate this claim on the pre-AEDPA standard, under which the court adjudicates questions of law and mixed questions of fact and law *de novo*, without engaging in additional scrutiny. *Dye v. Frank*,

11

355 F.3d 1102, 1107 (7th Cir. 2004) (citing *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 2004) (holding that AEDPA only applies where the state court adjudicated the constitutional issue on the merits)).

The applicable precedent for Ellison's claim, as he points out, is *Sheppard*. The adverse publicity in *Sheppard*, however, was much more extreme than the publicity in the instant case. In *Sheppard*, the negative publicity began on the day of the victim's funeral when a local newspaper quoted a prosecutor criticizing Sheppard, the defendant. 384 U.S. at 338. An extensive series of articles and editorials followed, many of which stated quite explicitly that Sheppard was guilty. *Id.* at 338-342. The coroner's inquest was broadcast on television and radio and, at the inquest, the coroner forcibly removed Sheppard's counsel to the cheers of the spectators, after which the coroner was hugged and kissed by a number of women in the audience. *Id.* at 340. The names of the individuals in the jury pool were released to the public, and so the potential jurors received letters and phone calls concerning the case. *Id.* at 342. At the trial itself, the media interfered with the effective functioning of the trial. *Id.* at 343-34. Eleven of the eventual jurors admitted in *voir dire* to having read about the case in the newspaper. *Id.* at 345. The jurors posed for photographs for the newspapers. *Id.* There were many other abuses listed by the Court, but these examples should suffice to give an idea of how extreme the behavior that led to the overturning of the *Sheppard* conviction was. There is nothing in the evidence in the instant case to suggest to the court that anything approaching the abuses described in *Sheppard* occurred in Ellison's case. The only evidence of media coverage offered by Ellison to any of the courts hearing his case is the trial judge's statement that he heard something about the case on the radio. Specifically,

the trial judge stated that he heard on the radio that a baby murder case was going to be continued. Trial Tr., 5-6. That, in itself, fails to demonstrate that "prejudicial news" existed in this case, much less that there was a "reasonable likelihood that [that] prejudicial news prior to trial [would] prevent a fair trial." *Sheppard*, 384 U.S. at 363. Ellison consequently fails to meet his burden of showing that the trial judge should, *sua sponte*, have moved for a change of venue.

### F. Inflammatory Remarks

Ellison argues that the trial judge abused his discretion when he allowed the prosecutor to make certain remarks in his closing arguments, and that the allowance of those statements denied his right to a fair trial. Specifically, Ellison objects to: (1) the prosecutor calling him a liar, (Pet. for Post-Conviction Relief, 25); (2) the prosecutor's statement that if someone else had committed the murder, they would be on trial instead of Ellison, *Id.* at 26 (objection sustained); (3) the prosecutor telling the jury that the only reason that Ellison stopped shaking the baby was that his arms hurt, *Id.* at 27; and (4) the prosecutor's descriptions of how the child appeared prior to the incident compared to how it appeared upon arrival at the hospital. *Id.* at 28.

"In evaluating a claim of prosecutorial misconduct as a violation of the petitioner's due process right to a fair trial, the inquiry is whether the prosecutor's … statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Shepard v. Lane*, 818 F.2d 615, 621 (7th Cir. 1987) (quoting *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986)). The Illinois Appellate Court apparently concluded that the prosecutor's remarks were not improper, although it does not state the reasons why not. *People v. Ellison*, No. 2-01-0019, 3. On the other hand,

13

Ellison fails to provide specific reasons or cite to any precedent as to why these remarks were so improper (and the Illinois courts' rulings on them so unreasonable) as to deny him due process. Ellison has therefore failed to demonstrate that either the Illinois courts applied the wrong law or made "decisions … at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, that a writ must issue." *Hall*, 106 F.3d at 749.

### G. Claims of Innocence as an Aggravating Factor

Ellison's final claim is that the trial court abused its discretion in sentencing by considering his protestations of innocence as an aggravating factor. However, abuse of discretion in sentencing is not a constitutional claim, but is rather a matter of state law. Hence it is not grounds for habeas corpus relief. *United States ex rel. Davilla v. Clark*, 159 F. Supp. 2d 1081, 1084 (N.D. Ill. 2001). Moreover, even if there was a constitutional issue with this sentence, the appellate court concluded that the trial court reasonably considered Ellison's protestations of innocence post-conviction as an indication that he was a poor prospect for rehabilitation. *People v. Ellison*, No. 2-01-0019, 15. The court can see no reason, and Ellison gives it none, to find that the trial judge's decision to interpret Ellison's protestations of innocence post-conviction as an indication that he was a poor prospect for rehabilitation was unreasonable or unconstitutional.

### III. CONCLUSION

For the reasons set forth above, Ellison's petition for habeas corpus relief is denied.

                                                        ENTER:

                                                        _____/s/_____
                                                        JOAN B. GOTTSCHALL
                                                        United States District Judge

DATED: June 13, 2008